## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ANTHONY MARCANTONI,** | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. RWT-15-2194 |
| | * | (Related Criminal Case No. RWT-10-0777) |
| **UNITED STATES OF AMERICA,** | * | |
| Respondent. | * | |

## <u>MEMORANDUM OPINION</u>

Petitioner seeks an evidentiary hearing and discovery to resolve issues raised in his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. ECF No. 982. He argues his counsel was ineffective in three respects: 1) in permitting Petitioner to enter into a Plea Agreement involuntarily and unknowingly by failing to seek a continuance to allow them to fully explain the Plea Agreement to him; 2) in failing to seek suppression of wiretap evidence on the grounds that the Government found the wiretapped line through the warrantless use of a cell site simulator; and 3) in failing to object to a factual disparity between the Indictment and Petitioner's presentence report.

## BACKGROUND

On May 2, 2012, Petitioner Anthony Marcantoni was charged in two counts of a Second Superseding Indictment that brought sixteen counts against ten defendants for their involvement in a large drug conspiracy in Maryland. ECF No. 341. The two counts naming Petitioner were: (1) Count One: distributing and possessing with the intent to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana; and (2) Count Sixteen: distributing and possessing with intent to distribute a mixture and substance containing

marijuana. ECF No. 341, at 2-6, 23. In his sworn declaration, Petitioner stated, "From the outset, I advised counsel that I had no interest in pleading guilty and that I requested a trial." ECF No. 982-3, at 1 ¶ 3. On June 22, 2012, Petitioner pleaded "Not Guilty" on both counts. ECF No. 402. Petitioner was then on course to participate in an eight-week trial scheduled to begin on September 11, 2012. ECF No. 188.

On August 30, 2012, Petitioner's counsel moved to suppress evidence obtained and derived from a wiretap on "Line J," claiming the wiretap was unlawful. ECF No. 427. The Court conducted a hearing regarding the Line J wiretap on September 10, 2012, the day before the trial was scheduled to commence and denied the motion. ECF No. 982-4, at 2 ¶ 9.

The same day the Court denied Petitioner's motion to suppress, the Government filed a notice pursuant to 21 U.S.C. § 851(a) that it would seek enhanced penalties against Petitioner under 21 U.S.C. § 841. ECF No. 453. The notice informed Petitioner that as a result of his prior conviction,[1] he faced a mandatory minimum of twenty years' imprisonment with at least ten years' supervised release if the drug quantity was found to be 1,000 kilograms or more. *Id.* If the drug quantity was found to be less than 1,000 kilograms but more than 100 kilograms, he faced a mandatory minimum under § 841(b)(1)(B) of ten years' imprisonment with at least eight years' supervised release. *Id.*

On the morning trial was to commence, Petitioner received a plea offer from the Government with a deadline of 9:00 AM that morning. ECF No. 459. The Plea Agreement would allow Petitioner to avoid the risk of a mandatory twenty-year sentence. *Id.* The Stipulated Facts established the quantity of marijuana as less than 1,000 kilograms but more than 700 kilograms. *Id.* With this quantity, Petitioner would be subject to the ten-year mandatory

---

[1] Petitioner was previously convicted of conspiracy to distribute marijuana in the United States District Court for the District of Maryland, and was sentenced to 60 months imprisonment on April 6, 2005. ECF No. 453-1.

minimum sentence rather than the twenty-year minimum he would have faced if the jury determined the quantity involved was 1,000 kilograms or more at trial.  *Id.*

By the time Petitioner's counsel had received the written Plea Agreement and  presented it to Petitioner in his holding cell, they had twenty minutes to explain to Petitioner the new mandatory minimums he faced following the § 851 notice, the provisions of the Plea Agreement, the Stipulated Facts attached to it, and the legal requirements of Rule 11.  ECF No. 982-4, at 2-5 ¶¶ 15-38.  Petitioner "peppered" his counsel with questions regarding these issues, causing his counsel to become concerned that he "failed to appreciate all material elements of the Plea Agreement."  *Id.* at 3 ¶¶ 20, 22.  These concerns notwithstanding, Petitioner's counsel believed the Plea Agreement to be "the most appropriate disposition" for the Petitioner based on the denial of the motion to suppress the Line J wiretap evidence,[2] so they recommended he accept the offer and sign the Plea Agreement.  *Id.* at 4 ¶ 33.  Petitioner signed the Plea Agreement and attached Stipulated Facts, as did his counsel.  ECF No. 459, at 9.  The Rule 11 proceeding commenced at approximately 9:30 a.m.  ECF No. 994-3, at 1.

At the Rule 11 proceeding, the Court asked Petitioner if he had read the Plea Agreement and discussed its contents with his attorneys.  ECF No. 994-3, at 7.  Petitioner answered that he had.  *Id.*  The Court asked if he believed he understood the provisions of the Plea Agreement, and Petitioner said he did.  *Id.*  After affirming Petitioner had affixed his signature to the Plea Agreement and Stipulated Facts, the Court asked the Government to summarize the essential provisions of the Plea Agreement to "make sure nothing was overlooked" when Petitioner read them.  *Id.* at 8.

---

[2] In an affidavit attached to this Motion, Petitioner's defense attorney Howard L. Cardin stated, "The 'Line J' wiretap, and the fruits of it, amounted to the most damaging information against [Petitioner]."  ECF No. 982-5, at 1 ¶ 8.

The Government summarized the key provisions of the Plea Agreement.  *Id.* at 8-13.
Under the Plea Agreement, Petitioner agreed to plead "Guilty" to Count One of the Second
Superseding Indictment, with the factual stipulation that the quantity of marijuana was between
700 and 1,000 kilograms instead of the 1,000 kilograms or more as he was charged in the
indictment.  *Id.* at 9-10.  The Government agreed to dismiss the charges under Count Sixteen of
the Second Superseding Indictment.  *Id.* at 11.  Petitioner also agreed to forfeit a Rolex watch
and $500,000.  *Id.*  The Government summarized the waiver of his rights to appeal and the other
essential provisions in the Plea Agreement.  *Id.* at 12-13.

The Court then asked Petitioner if he had any concerns or misunderstood any aspect of
the Plea Agreement as summarized by the Government.  *Id.* at 13.  Petitioner said he understood
the description, but was confused about the length of supervised release in relation to the § 851
Notice.  *Id.*  The Court and the Government clarified why eight years' supervised release was the
statutory minimum, and Petitioner said he understood.  *Id.* at 17.

The Court asked if anybody had threatened or forced Petitioner to plead guilty.  *Id.* at 19.
Petitioner responded, "Just with the 20-year mandatory minimum.  That's about it."  *Id.*  The
Court asked Petitioner if anyone had made any threats "other than the prosecutor promising to
prosecute you," and the Petitioner said, "No, Your Honor."  *Id.*  The Court then explained the
mechanism of the Sentencing Guidelines and its relation to the mandatory minimum sentence.
*Id.* at 22-24.  Petitioner said he understood this explanation.  *Id.* at 24.  The  Court explained the
sentencing process, describing the factors the Court must and will consider at the time of
Petitioner's sentencing.  *Id.* at 25-26.  Petitioner again verbally confirmed he understood the
Court's explanation.  *Id.* at 26.  The Court enumerated the rights Petitioner agreed to waive in the
Plea Agreement and asked if Petitioner understood those rights and what the waiver of them

4

meant.  *Id.* at 26-30.  Petitioner expressed his understanding of each of the rights and the implications of waiving them.  *Id.*

The Court then asked the Government to present the Stipulated Facts.  *Id.* at 31. Following the Government's presentation of the Stipulated Facts, Petitioner said he did not know some of the people listed in the Stipulated Facts as his co-conspirators.  *Id.* at 33-35.  After the Government insisted on the need for Petitioner to admit all facts were true as stipulated, the Court called for a brief recess to allow Petitioner to confer with his counsel.  *Id.* at 36.  After returning, Petitioner said he felt "like the Government is squeezing me to try to figure out who I know and who I don't know."  *Id.* at 42.  After a second recess, the Court asked Petitioner to answer whether the people listed were his co-conspirators, and Petitioner admitted that they were and indicated he had no further objections to the Stipulated Facts.  *Id.* at 42.  The Court asked if there was anything about that day's proceedings Petitioner did not understand, and Petitioner responded, "No."  *Id.* at 43.  The Court then accepted Petitioner's guilty plea and the Plea Agreement and scheduled his sentencing hearing.  *Id.* at 45.

On December 13, 2012, the Court sentenced Petitioner to 121 months' imprisonment, eight years' supervised release, and a special assessment.  ECF No. 619.  Petitioner filed a Notice of Appeal the following week.  ECF No. 629.  The Fourth Circuit affirmed the conviction. *United States v. Marcantoni*, 568 Fed.Appx. 229 (4th Cir. 2014); ECF No. 860.   On June 22, 2015, the Court reduced Petitioner's sentence to 120 months' imprisonment and 96 months' supervised release based on a retroactively lowered guideline sentencing range. ECF No. 973.  Petitioner filed this § 2255 Motion and supporting affidavits with assistance of counsel on July 23, 2015.  ECF No. 982.  The Government responded in opposition to the Motion on December 8, 2015.  ECF No. 994.  Petitioner filed his Reply on December 21, 2015

then later filed Notices of Supplemental Authority on March 16, 2016 and April 5, 2016.[3]
ECF Nos. 996, 1017, 1019.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may move the court to vacate, set aside, or
correct a sentence if he can prove by a preponderance of the evidence that "the sentence was
imposed in violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; *Miller v.
United States*, 261 F.2d 546, 547 (4th Cir. 1958).  The claim must show a "fundamental defect
which inherently results in a complete miscarriage of justice" or "an omission inconsistent with
the rudimentary demand of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).  If
the § 2255 motion, along with the files and records of the case, "conclusively show that [he] is
entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion
may be dismissed summarily. *Miller*, 261 F.2d at 547.

## ANALYSIS

As an initial matter, Petitioner procedurally defaulted his claims that do not sound in
ineffective assistance of counsel.  The remaining claims amount to three arguments, claiming
counsel was ineffective for: 1) not seeking a continuance before accepting the Plea Agreement,
resulting in Petitioner entering into the Plea Agreement involuntarily and unknowingly;
2) failing, because of a conflict of interest, to seek suppression of the Line J wiretap evidence on

---

[3] The notices are identical and provide the same case.  ECF Nos. 1017, 1019.

the grounds that the line was discovered through warrantless use of a cell site simulator device;[4] and 3) failing to object to "materially inaccurate" information in the Plea Agreement and Presentence Report ("PSR").   ECF Nos. 982-1, 996.   For the reasons that follow, Petitioner's arguments fail.

## I.        All claims unrelated to ineffective assistance of counsel have been procedurally defaulted

Errors in sentencing that could have been raised on direct appeal but were not pursued are procedurally defaulted from being raised as a basis for a collateral attack.   *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999).   Such claims can be presented on collateral review only if the petitioner shows either: 1) "cause and prejudice" resulted from the error; or 2) "a miscarriage of justice would result from the refusal of the court to entertain a collateral attack" (i.e. actual innocence).   *Id.*

On his direct appeal to the Fourth Circuit, Petitioner argued he had not knowingly waived his right to appeal in signing the Plea Agreement and contended the Court erred when it denied Petitioner's "motion to disclose allegedly intercepted communications between" his counsel and his co-defendants' counsel.   *United States v. Marcantoni*, 568 Fed.Appx. 229 (4th Cir. 2014). The Fourth Circuit found Petitioner "knowingly and intelligently agreed to waive his right to appeal," and he "has not challenged his conviction or sentence on appeal."   *Id.*   None of Petitioner's claims here relate to these issues raised on direct appeal.   Therefore, Petitioner has procedurally defaulted his claims that do not relate to ineffective assistance of counsel.   *See United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999) ("A claim of ineffective

---

[4] "A cell site simulator is a device that mimics a wireless carrier's base station or cell tower.   Nearby wireless devices communicate and attempt to connect to the simulator as they would any nearby station.   The simulator records the location and electronic identifying information of each wireless device and stores that information." Jason M. Weinstein, William L. Drake, & Nicholas P. Silverman, *Privacy vs. Public Safety: Prosecuting and Defending Criminal Cases in the Post-Snowden Era*, 52 AM. CRIM. L. REV. 729, 741 (2015) (footnotes omitted). Petitioner refers to this device as a "stingray."   *See generally* ECF No. 982-1.

assistance of counsel should be raised by . . . [a] motion under 28 U.S.C. § 2255 in the district court and not on direct appeal.").

Petitioner has not argued the errors he claims show cause and prejudice outside the context of ineffective assistance of counsel, nor has he argued for actual innocence. Instead, he contends "virtually *all* of Petitioner's claims sound in ineffective assistance of counsel," and he has framed his claims to reflect this assertion. ECF No. 996, at 2 n.2. In the absence of any alternative argument for why his claims should be considered outside this framework, Petitioner procedurally defaulted his claims except as they sound in ineffective assistance of counsel.

## II.     Petitioner's Plea Agreement was valid, and counsel was not ineffective as it relates to the Plea Agreement

Petitioner claims he entered into the Plea Agreement unknowingly and involuntarily as a result of ineffective assistance of counsel. ECF No. 982-1, at 10-29. Specifically, Petitioner claims counsel was ineffective for failing to request a continuance to allow them to explain the Plea Agreement to Petitioner. *Id.* at 16. Petitioner also argued material differences between the Plea Agreement and the Second Superseding Indictment confused Petitioner. *Id.* at 27. This Court finds the record shows Petitioner entered into the Plea Agreement knowingly and voluntarily, and his counsel was not ineffective as it relates to the Plea Agreement.

### 1.     Petitioner's statements at his Rule 11 colloquy contradict his allegations that he did not enter into the Plea Agreement knowingly and voluntarily

Petitioner's statements at his Rule 11 colloquy belie his claims that he entered into the Plea Agreement unknowingly and involuntarily. As shown above, this claim is procedurally defaulted to the extent it does not sound in ineffective assistance of counsel. Even if it was not procedurally defaulted, the claim fails on the merits. "The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  In making this determination, "courts look to the totality of the circumstances surrounding the guilty plea, [*Alford*, 400 U.S. at 31], granting the defendant's solemn declarations of guilt a presumption of truthfulness." *Id.* (citing *Henderson v. Morgan*, 426 U.S. 637, 648 (1976) (plurality opinion)).  "In the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted); *see also United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

Here, Petitioner's allegations contradict his sworn statements at his Rule 11 colloquy. Petitioner attempts to overcome the substantial weight given to his sworn statements at his Rule 11 colloquy by arguing the record shows the colloquy "failed to conform with the strict requirements of Rule 11."  ECF No. 982-1, at 11 n.7.  He contends the Court should not have found he entered into the Plea Agreement knowingly and voluntarily because he posed "myriad questions" regarding the Plea Agreement at his Rule 11 colloquy.  *Id.*

Petitioner's argument has no merit because the record shows the Court resolved any questions Petitioner had about the Plea Agreement at his Rule 11 colloquy.  Throughout the proceeding, Petitioner indicated he understood all aspects of the Plea Agreement and Stipulated Facts, the rights he waived in entering the Plea Agreement, the mandatory minimum penalty he faced, and the waiver of his right to appeal.  *See* ECF No. 994-3.  When Petitioner was confused, first about the enhanced minimum length of supervised release and then about the co-conspirators listed in the Stipulated Facts, the Court explained the issues to him and asked if

he understood. *Id.* at 13-17, 34-42.   Both times, Petitioner said he did. *Id.* at 17, 42.   The Court took two separate recesses to allow Petitioner to confer with his counsel. *Id.* at 34-42. Petitioner's initial confusion at his Rule 11 colloquy cannot serve as a basis to invalidate Petitioner's statements at his Rule 11 proceedings when the Court resolved that confusion. Therefore, these statements are afforded a "presumption of truthfulness," and Petitioner's allegations that contradict them must be dismissed. *Walton*, 321 F.3d at 462.

Petitioner also argues the differences in the quantity of marijuana and conduct time frame between the Plea Agreement and Second Superseding Indictment further confused Petitioner. ECF No. 982-1, at 27-28.   As above, this argument contradicts Petitioner's sworn statements at his Rule 11 colloquy, where he said he understood the Stipulated Facts.   Moreover, the difference in marijuana quantity was not prejudicial.   The Second Superseding Indictment listed the quantity of marijuana at 1,000 kilograms or greater, carrying a twenty-year mandatory minimum.   Petitioner pleaded guilty to a quantity of greater than 700 kilograms but less than 1,000 kilograms, an offense carrying a ten-year mandatory minimum.   This variation was part and parcel of the Plea Agreement.   It allowed Petitioner to avoid the risk of receiving a twenty-year mandatory minimum after trial by allowing him to plead guilty to a quantity that carried a much lower ten-year mandatory minimum.   It did not undermine the factual basis of the plea, nor did it prejudice the Petitioner.   This argument also holds true with the disparate temporal range.

Based on Petitioner's sworn statements at his Rule 11 colloquy, this Court finds he entered into the Plea Agreement knowingly and voluntarily.   Additionally, as shown below, counsel was not ineffective as it relates to the Plea Agreement.

2. **Petitioner's counsel was not ineffective as it relates to the Plea Agreement because Petitioner did not suffer actual prejudice from the alleged errors**

Ineffective assistance of counsel claims are evaluated using the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this two-part test, to prevail on an ineffective assistance claim, a petitioner must show: 1) his attorney's performance fell below an objective standard of reasonableness; and 2) he suffered actual prejudice. *Id.* To show "actual prejudice" in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, this Court need not reach the question of whether Petitioner's counsel's performance fell below an objective standard of reasonableness because Petitioner has failed to demonstrate he suffered actual prejudice from the allegedly deficient conduct. *See Foster*, 68 F.3d at 88 (declining to reach question of attorney's performance because petitioner was not prejudiced by any alleged misconduct from his attorney). Petitioner baldly alleges the record demonstrates he can show a reasonable probability that he would not have entered the Plea Agreement had counsel moved for a continuance and explained it without the time constraints. ECF No. 982-1, at 39. However, the record shows quite the opposite. Moreover, Petitioner has failed to show a rejection of the Plea Agreement would have been objectively reasonable under the circumstances.

First, the Rule 11 colloquy gave Petitioner more time to consider and understand the Plea Agreement outside the initial twenty-minutes where he conferred with his counsel, and he still did not attempt to withdraw his guilty plea. As described above, during the hour-long Rule 11 colloquy, the Government and the Court explained the terms and implications of the Plea

Agreement, and Petitioner repeatedly affirmed his understanding of those terms and implications, and he confirmed his guilty plea.  ECF No. 994-3.

The record also shows Petitioner did not wish to withdraw his guilty plea nearly a month after the Rule 11 colloquy.  Petitioner cites a letter, sent by Petitioner *pro se* to this Court in between his Rule 11 colloquy and sentencing hearing, as evidence of Petitioner's confusion surrounding the Plea Agreement.[5]  ECF No. 572.  However, in that letter, sent nearly a month after Petitioner signed the Plea Agreement and participated in his Rule 11 colloquy, Petitioner wrote, "I do not wish to withdraw my plea of guilty."  ECF No. 572, at 2.  If Petitioner still accepted his guilty plea at this point, after he had nearly a month to further consider the Plea Agreement, there is no reasonable probability a continuance of a few hours or more would have made any difference in the outcome of the case.  Additionally, Petitioner did not seek to withdraw his guilty plea at the time of sentencing.

Nowhere in the attached affidavits and declarations does Petitioner or his counsel say the result would have been different if they had more time to consider the Plea Agreement. Petitioner rests much of his argument for ineffective assistance of counsel on the supplied affidavit of his trial attorney Howard Cardin.  ECF No. 982-4.  In that affidavit, Mr. Cardin states Petitioner did not have adequate understanding of the Plea Agreement because he and co-counsel, Steven Levin, had insufficient time to explain it to him.  ECF No. 982-4, at 4 ¶¶ 28, 32.  Mr. Cardin also states he and Mr. Levin "should have asked for more time with which to confer with our client," and he "was unable to come to an adequate legal conclusion as to whether [Petitioner] should have pled guilty" within the amount of time he had to discuss it with

---

[5] Petitioner sent the letter in question because he believed the Government was seizing assets from his checking account as a part of the forfeiture agreement.  ECF No. 572.  Petitioner's counsel wrote another letter to the Court regarding this forfeiture issue, which the Court construed as a Motion for Accounting.  ECF Nos. 809, 811.  The Court denied the motion after the Government explained in its response that it had not seized any bank accounts or any other assets from Petitioner besides the Rolex.  ECF No. 822.

Petitioner.  *Id.* at 3-4 ¶¶ 34, 36.   Mr. Cardin believes Petitioner decided to accept the Plea

Agreement based on his trust in Mr. Cardin arising from a long attorney/client relationship, *id.* at

4 ¶ 35, and this view is corroborated by Petitioner's statement in his affidavit attached to this

Motion, ECF No. 982-3, at 3 ¶ 19.   However, nowhere in Mr. Cardin's affidavit does he state he

would have advised Petitioner differently had he asked for and received more time to consider it.

Petitioner states in his sworn declaration, "From the outset, I advised counsel that I had no

interest in pleading guilty."   ECF No. 982-3, at 1 ¶ 3.   This statement carries little weight

compared to the rest of the record.   Petitioner signed the Plea Agreement, affirmed his

understanding and acceptance of its terms at his Rule 11 colloquy, and expressly declined to

withdraw his guilty plea nearly a month later.

　　　Moreover, Petitioner has failed to demonstrate that rejecting the Plea Agreement would

have been an objectively reasonable choice under the circumstances.   Petitioner only alleges that

the record shows a reasonable probability that he would have rejected the Plea Agreement.   He

does not say anywhere in his argument or attached affidavit that he would have done so.   Even

had he made such an allegation, it would be insufficient.   For a petitioner to show a reasonable

probability he would have insisted on going to trial but for counsel's errors, he must do more

than tell the court he would have gone to trial if given different advice.  *Christian v. Ballard*, 792

F.3d 427, 452 (4th Cir. 2015) (citation omitted).   The "petitioner must convince the court that a

decision to reject the plea bargain would have been rational under the circumstances."  *Id.*

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).    The circumstances here resemble

those in *Christian*, 792 F.3d at 453.   There, the Fourth Circuit considered the "overwhelming"

record evidence of the petitioner's guilt and the strong likelihood the petitioner would have

received life imprisonment or a 100-year sentence at trial.  *Id.*   Compared to the forty-year

13

sentence paired with generous parole provisions consented to in the plea agreement, the Fourth Circuit "[had] no trouble" concluding the state court could have reasonably found the petitioner was "lucky to get the deal that he did." *Id.* (internal quotation marks omitted).

As in *Christian*, Petitioner's low likelihood of prevailing at trial and the lower sentence he faced under the Plea Agreement militate against any contention that rejection of the Plea Agreement would have been an objectively reasonable choice.   The Plea Agreement allowed Petitioner to forego the risk of conviction for charges carrying a mandatory minimum sentence of twenty years' imprisonment and ten years' supervised release, twice the mandatory sentence length for the charges Petitioner pleaded guilty to.   ECF No. 453; ECF No. 459.   Petitioner has made no allegations, nor has he presented any evidence that suggests he might have prevailed at trial.   Both of Petitioner's co-defendants received jury verdicts convicting them after the Government presented wiretap evidence and testimony of co-conspirators.   ECF No. 544. Especially after Petitioner's motion to suppress the Line J evidence failed, evidence which Mr. Cardin called "the most damaging" against Petitioner, rejection of the Plea Agreement would have been unreasonable.   ECF No. 982-5, at 1 ¶ 8.   Under these circumstances, Petitioner has failed to demonstrate rejection of the Plea Agreement would have been an objectively reasonable choice.   In fact, the record instead suggests rejection would have been objectively unreasonable.

In sum, the record refutes Petitioner's allegation that there was a reasonable probability he would have chosen differently if given more time to consider the Plea Agreement.   The record and evidence attached to Petitioner's Motion both show a substantial probability Petitioner would have accepted the Plea Agreement regardless of the amount of time his counsel had to confer with him.   Petitioner has therefore not satisfied his burden for demonstrating actual

prejudice resulted from ineffective assistance of counsel, so this claim for ineffective assistance of counsel must be dismissed.

### III.   Counsel was not ineffective for failing to move to suppress the Line J evidence on the basis that Line J was found via a warrantless use of a cell site simulator

Petitioner also claims his counsel was ineffective in failing to seek suppression of the Line J wiretap evidence on the basis that it was discovered through warrantless use of a cell site simulator.  ECF No. 982-1, at 32.  He claims further that this failure was the result of an actual conflict of interest on the part of one of his two trial attorneys.  *Id.* at 33.  These highly speculative claims must be dismissed.

#### 1.   Petitioner's ineffective assistance of counsel claim fails on the merits because he has not shown his counsel knew of the alleged use of a cell site simulator at the time they moved to suppress the Line J evidence

To prove ineffective assistance of counsel, Petitioner must first show his counsel's conduct fell below an objectively reasonable standard.  *Strickland*, 466 U.S. at 687.  In his attached declaration, Mr. Cardin said "at some point prior to May 4, 2015," he "became aware" of the use of a cell site simulator in connection to the investigation into Jacob Harryman, one of Petitioner's co-defendants.  ECF No. 982-5, at 1 ¶ 3.  He stated Assistant States Attorney Francis Pilarski informed him on or after May 4, 2015 of the use of a cell site simulator in the Harryman investigation.  *Id.* at 1 ¶ 4.  Mr. Cardin believes the investigators could not have known about Line J without a cell site simulator being used in that investigation.  *Id.* at 1 ¶ 7.

Petitioner has offered no evidence to show his counsel had or should have had any awareness at the time of the suppression hearing that a warrantless cell site simulator was used to find Line J.  Counsel cannot be found ineffective for failing to move based on facts unknown to them or facts they cannot reasonably be expected to have known.   Mr. Cardin's statements suggest he "became aware" of the cell site simulator's use long after the hearing on the motion to

suppress the Line J evidence on September 10, 2012.  Unlike Mr. Cardin's statements relating to the Plea Agreement, where he says he and Mr. Levin "should have asked the court for more time within which to confer with our client," Mr. Cardin makes no statement claiming he and Mr. Levin should have moved to suppress the Line J evidence based on warrantless use of a cell site simulator.  ECF No. 982-4, at 4 ¶ 34.  This further suggests Mr. Cardin had no knowledge of any use of a cell site simulator at the relevant time.  Petitioner alleges "there was every indication that Levin, a former AUSA, had reason to believe a [cell site simulator] was used to find 'Line J.'"  ECF No. 982-1, at 32.  Petitioner has offered no evidence to support this allegation.  "Every indication" apparently amounts to the fact that Mr. Levin is a former AUSA.  Nothing in the record suggests Petitioner's counsel had any awareness of any use of a cell site simulator, warrantless or otherwise at the relevant time.

Petitioner has alleged very few facts that rise above speculation to suggest a warrantless use of a cell site simulator led to the discovery of Line J, nor has he plausibly alleged that his counsel knew or should have known about this alleged use at the time they moved to suppress the Line J evidence.  Petitioner has not submitted anything above mere speculation to support his allegations.  Therefore, this claim fails on the merits.

### 2. Petitioner has not demonstrated Mr. Levin labored under an actual conflict of interest

In a related claim, Petitioner argues Mr. Levin labored under an actual conflict of interest resulting in the failure to move to suppress the Line J evidence on the cell site simulator basis.  "To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under an 'actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'"  *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).

Petitioner argues Mr. Levin's conflict of interest arose from a non-disclosure agreement Mr. Levin allegedly entered into during his prior employment as an Assistant United States Attorney.   ECF No. 982-1, at 33.   Petitioner's only support for the existence of this non-disclosure agreement is his "information and belief" and an unrelated non-disclosure agreement from 2011 between the Federal Bureau of Investigation and the Baltimore Police Department and the State's Attorney for Baltimore City. *Id.*; ECF No. 982-2.  Even if Mr. Levin had entered into such a non-disclosure agreement, this claim runs into the same problem as above: there is no evidence that Petitioner or his counsel knew a cell site simulator was used to identify Line J at the time they moved to suppress the evidence.  In fact, Mr. Cardin's affidavit claims he learned about the alleged use of a cell site simulator after the fact.  As said above, counsel cannot be found ineffective for failing to move based on facts they only later discovered. Moreover, a non-disclosure agreement would not necessarily mean Mr. Levin labored under an actual conflict of interest.  If necessary, Mr. Levin could have filed the motion under seal to avoid violating the agreement.  Because Petitioner cannot plausibly allege an actual conflict of interest or adverse performance, this claim fails on the merits.

IV.     **Counsel was not ineffective for not objecting to the date range in the presentencing report**

Petitioner also claims counsel was ineffective for failing to object to a factual disparity between the Stipulated Facts attached to the Plea Agreement and the presentencing report ("PSR").  ECF No. 982-1, at 37-38.  The Stipulated Facts list a three-year date range for the conduct, "[b]etween in or about 2008 and at least in or about January 2011."  ECF No. 459-1.

The PSR states, "The offense occurred between a time unknown to the Grand Jury but no later than in or about January 2001." ECF No. 982-1, at 37 (citing PSR ¶ 1).[6]

Under Fed. R. Crim. P. Rule 32(f), parties may object to material information in the PSR. Petitioner contends counsel was ineffective for failing to raise an objection pursuant to Rule 32(f). ECF No. 982-1, at 38. He argues actual prejudice resulted because his sentencing range was between 120 and 121 months, and he received a sentence at the "high end" rather than the low end. *Id.* However, nothing in the record suggests the disparity in the conduct date range swayed the Court's decision. Moreover, even if this one-month difference resulted from the factual disparity between the PSR and Stipulated Facts, that one-month difference has already been remedied because Petitioner's sentence was later lowered to 120 months, the lowest allowed by the statutory minimum. ECF No. 973.

## EVIDENTIARY HEARING

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations omitted). A district court need not hold an evidentiary hearing "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.* As shown above, Petitioner's claims are either procedurally defaulted or they fail on the merits. As such, an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

Petitioner may not appeal this Court's denial of relief under § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 F. App'x 272, 273 (4th Cir. 2007). A

---

[6] This appears to be a scrivener's error because the amended PSR at ¶ 1 states "The offense occurred between a time unknown to the Grand Jury, but no later than in or about 2001, and in or about January 2011, in the State and District of Maryland." The error does not affect the Court's analysis.

certificate of appealability will not issue unless Petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c) (2012); *Hardy*, 227 F. App'x at 273.  "A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 F. App'x 296, 297 (4th Cir. 2009).  As shown above, Petitioner's claims are procedurally defaulted or meritless.  No reasonable jurist could find merit in any of Petitioner's claims, and thus no certificate of appealability will issue.

## CONCLUSION

This Court finds Petitioner's claims not relating to ineffective assistance of counsel are procedurally defaulted, and his ineffective assistance of counsel claims are meritless. Petitioner's Motion will be denied, and no certificate of appealability will be issued.  A separate order follows.

Date:  July 15, 2016

_____/s/_____
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE